**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PETER C. ADIEMEREONWU,** | ) | |
| **# A28 672 077,** | ) | |
|       **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 3:04-CV-2072-B |
| | ) | |
| **ALBERTO GONZALES, U.S. Attorney** | ) | |
| **General, et al.,**[1] | ) | |
|       **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: Peter C. Adiemereonwu, proceeding *pro se*, styled his initial pleading as a petition for writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. § 2241. In his subsequent pleadings, he explains that he is seeking a declaratory judgment instead of habeas corpus relief. (Response filed on February 7, 2005, at 6).

Parties: Plaintiff is presently incarcerated at the Rollins Plains Detention Center in

---

[1] Plaintiff named John Ashcroft, former United States Attorney General, and Tom Ridge, former United States Secretary Homeland Security, as Defendants. The caption is being changed pursuant to Fed. R. Civ. P. 25(d) to reflect the current U.S. Attorney General and Secretary Homeland Security. Defendants further note that the Secretary of the Department of Homeland Security succeeds the Attorney General as the department head of the former Immigration and Naturalization Service (INS). (Mot. to Dism. at note 1).

Haskell, Texas. Respondents are Alberto Gonzales, United States Attorney General; Michael Chertoff, Secretary of Homeland Security; Michael Garcia, Assistant Secretary for the Bureau of Immigration and Customs Enforcement (BICE); and Angela K. Barrow, BICE District Director. The court has issued process in this case.

<u>Statement of Case</u>: Plaintiff seeks to be granted his United States Citizenship on equitable grounds, and to estop Respondents from deporting him. He alleges that the former Immigration and Naturalization Service (INS), as well as the current BICE and United States Citizenship and Immigration Service (CIS) willfully, wantonly, recklessly, and negligently delayed in processing his application for naturalization for more than eight years, and that this delay caused him to be denied his U.S. citizenship, to which he was duly entitled on an expedited basis under Executive Order 12939.

In response to this court's order to show cause, Respondents filed a motion to dismiss and attached copies of BICE's and CIS's records. They allege as follows: (1) Plaintiff is not entitled to judicial review of the denial of his naturalization application, because he did not exhaust his administrative remedies, (2) this case is not appropriate for habeas relief, and (3) Plaintiff lacks good moral character because he has been convicted of two crimes involving moral turpitude. Plaintiff has responded to the motion to dismiss.[2]

The procedural history, which follows, is based on the pleadings filed in this case as well as those filed in Plaintiff's prior mandamus and habeas actions.

---

[2] Prior to filing this action, Plaintiff filed a petition for writ of mandamus seeking to compel CIS to rule on his application for naturalization, see <u>Adiemereonwu v. Ashcroft, et al.</u>, 3:04cv0394-M (N.D. Tex., Dallas Div.), and a habeas corpus action challenging his mandatory detention during the pendency of his removal proceeding, see <u>Adiemereonwu v. Ashcroft, et al.</u>, 1:04cv210-C (N.D. Tex., Lubbock Div.).

Plaintiff, a native and citizen of Nigeria, entered the United States in September of 1985 on an F-1 student visa. (See Findings, Conclusions and Recommendation (F&R) filed on July 19, 2004 in No. 3:04cv0394-M, at 1). He married an American citizen and was given conditional permanent residency on February 28, 1989. (Id.). Within months after obtaining his conditional permanent residency status, Plaintiff enlisted in the United States Navy. (Id.). He served in both Operation Desert Shield and Operations Desert Storm before receiving an honorable discharge from active duty on July 9, 1993. (Id. and Respondent's Mot. to Dism. Exh. I at 13). On June 27, 1994, Plaintiff pled guilty in Criminal District Court No. One of Tarrant County, Texas, to the felony offense of aggravated assault on a peace officer, committed on or about September 11, 1993. (Mot. to Dism. Exh. I at 8). The trial court sentenced Plaintiff to three years deferred adjudication probation and a $1,000 fine. (Id.).

On April 18, 1996, Plaintiff filed an Application for Naturalization, Form N-400, seeking U.S. citizenship under an Executive Order that authorized expedited naturalization for aliens who served in active duty during the Persian Gulf conflict.[3] (Mot. to Dism. at 2). The INS

---

[3] Executive Order 12939, signed by President Clinton on November 22, 1994, provides, in pertinent part:
> [I]n order to provide expedited naturalization for aliens and noncitizen nationals who served in an active-duty status in the Armed Forces of the United States during the period of the Persian Gulf Conflict, it is hereby ordered as follows:
>> For the purpose of determining qualification for the exception from the usual requirements for naturalization, the period of Persian Gulf Conflict military operations in which the Armed Forces of the United States were engaged in armed conflict with a hostile force commenced on August 2, 1990, and terminated on April 11, 1991. Those persons serving honorably in active-duty status in the Armed Forces of the United States during this period are eligible for naturalization in accordance with the statutory exception to the naturalization requirements, as provided in section 1440(b) of Title 8, United States Code.

interviewed Plaintiff on June 10, 1997. (Id. and Exh. I at 21). During the interview the immigration officer requested that Plaintiff "submit certified court dispositions for his arrests." (Id. Exh. I at 21). Plaintiff argues that his application for naturalization was complete and that Respondent fabricated the request for additional documents after his interview. (Petition "Pet." at 4).

On July 8, 1997, within a month of his interview, the INS issued a Notice to Appear (NTA) alleging Plaintiff was deportable due to his 1994 conviction for aggravated assault on a peace officer, a crime involving moral turpitude committed within five years after admission. (Mot. to Dism. at 26). The status of this first removal proceeding is unclear. Respondent states that this NTA commenced removal proceedings which are still pending against Plaintiff. (Id. at 2). Plaintiff replies that "the INS tried, and terminated the [first removal] proceeding and waived their right to appeal." (Pet. at 5).

On July 18, 1997, shortly after the issuance of the above NTA, Plaintiff was convicted of misdemeanor DWI and was sentenced to forty-five days confinement in the county jail and a $850 fine. (Mot. to Dism. Exh. I at 5). On June 25, 2003, Plaintiff was also convicted of the federal offense of false use of a social security number and was sentenced to a three-year term of probation and a $3,000 fine, in United States v. Adieme, 4:03cr055-Y(01) (N.D. Tex., Fort

---

Exec. Order No. 12939, 59 Fed. Reg. 61,231, 1994 WL 658952 (Nov. 22, 1994).

When an applicant qualifies for naturalization under § 1440(b), he only must demonstrate good moral character for the one-year period prior to applying for naturalization, instead of the requisite five-year period. 8 C.F.R. § 329.2(d). Section 1440(b) does not alter the additional requirement that good moral character be shown from examination through taking the oath of allegiance. As a matter of fact 8 C.F.R. § 329.2(d) provides that the applicant must establish that he "continues to be" of good moral character.

4

Worth Div.).  (See Mot. to Dism. Exh. I at 1-3).

Based on the latter conviction, BICE arrested Plaintiff (see F&R at 2 in No. 3:04cv0394-M), and on August 6, 2003, it issued a new NTA charging Plaintiff with the following additional bases for removal:  (1) after Plaintiff's admission, he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and (2) Plaintiff's status as a conditional permanent resident "terminated by operation of law on August 9, 1991, due to his failure to file an I-751 joint petition."  (See Appendix to Respondent's response in No. 1:04cv210-C, at Exhs. 1 and 2).[4]

On February 19, 2004, during the pendency of his removal proceeding, Plaintiff filed his mandamus action in this court, seeking to compel a decision on his N-400 application.  See Adiemereonwu v. Ashcroft, 3:04cv0394-M (N.D. Tex., Dallas Div.).  On June 9, 2004, CIS denied the N-400 application for lack of good moral character.  (See Mot. to Dism. Exh. I at 21-24).  CIS concluded that Plaintiff had failed to "establish good moral character for one year prior to applying for naturalization" as well as "from the date of application up to the date of admission to citizenship," and that his 2003 federal offense occurred within the latter statutory period, thus causing him to lack good moral character.  (Id. at 22-23).  CIS found further support for its conclusion that Plaintiff lacked good moral character due to the following events:  (1) Plaintiff's incarceration in a penal institution for more than 180 days during the statutory period, (2) Plaintiff's lengthy criminal history, which "reflect[ed] a pattern of criminal behavior throughout the entire time . . . in the United States," and (3) Plaintiff's use of a fraudulent letter

---

[4]   In this action, Defendants have neither made reference to nor provided a copy of this second NTA.  The status of Plaintiff's removal proceedings is also unclear.

and false military documents.  (Id. at 23-24).

On July 2, 2004, Plaintiff sought administrative review from the denial of his N-400 application through the filing of Form N-336.  (Mot. to Dism. at 2 and 5, and Exh. I at 18-20). On August 11, 2004, this court dismissed the petition for writ of mandamus as moot.

Shortly thereafter, on August 30, 2004, Plaintiff filed his habeas corpus petition in the Abilene Division of the Northern District of Texas, pursuant to 28 U.S.C. § 2241, challenging his continued detention without bond during the pendency of his removal proceedings, and contending that he is not deportable because he has not been convicted of a crime of moral turpitude.  See Adiemereonwu v. Ashcroft, 3:04cv210-C (N.D. Tex., Abilene Div.).  The court denied the petition on December 28, 2004, concluding that the denial of bond during the pendency of Plaintiff's removal proceedings did not amount to a constitutional violation, and that Plaintiff had not exhausted his administrative remedies since his removal case was pending before the Board of Immigration Appeals (BIA).  Id.

Findings and Conclusions:  Plaintiff requests that this court exercise its equitable power to grant him his United States citizenship and estop Respondents from removing him.  He alleges that he would be a naturalized citizen if the former INS had followed its duty to process his naturalization application expeditiously, as required by the President's Executive Order.

This court cannot exercise independent jurisdiction to order Plaintiff naturalized.  Under section 310 of the INA, the "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."  8 U.S.C. § 1421(a) (West 2005); see also id. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter...."); INS v. Pangilinan, 486 U.S. 875, 883-84, 108 S.Ct.

6

2210, 2217, 100 L.Ed.2d 882 (1988) (holding that the federal courts do not have "the power to make someone a citizen" except to the extent authorized to do so by Congress in the exercise of its exclusive authority over naturalization).  Accordingly, Plaintiff's claim that this court order him naturalized fails to state a claim on which relief can be granted and should be dismissed.

Plaintiff's request for judicial review fares no better.  He seeks judicial review of the delay in processing his naturalization application as well as the denial of his naturalization application.  (Plaintiff's Response at 3-4).  The immigration statutes create two specific instances at which a district court may intervene in the naturalization process.  First, if CIS fails to render a decision upon an application within 120 days of the applicants' naturalization examination, the applicant may apply to the district court for the district where he resides to conduct a *de novo* hearing on the application, and the court may then either determine the matter for itself or remand to the CIS with instructions.  8 U.S.C. § 1447(b) (West 2005); 8 C.F.R. § 310.5.  Second, if CIS denies a naturalization application – and that denial has been confirmed after an administrative appeal, consisting of a hearing before a senior naturalization officer – the rejected applicant may seek *de novo* judicial review of the denial in the United States district court for the district in which he resides.  8 U.S.C. § 1421(c) (West 2005).

The first scenario does not exist in this case, despite Plaintiff's arguments to the contrary.  (See Plaintiff's Response at 3-4 seeking review under § 1447(b)).  On June 10, 1997, Plaintiff was examined by an INS officer in connection with his application for naturalization.  Almost seven years later, on June 9, 2004, his application was denied.  The delay alleged in the complaint/petition, pre-dated the filing date of this action.  While INS and/or CIS clearly took longer than 120 days to make a decision, a determination was eventually issued and thus

7

jurisdiction cannot be based on this premise. Langer v. McElroy, 2002 WL 31789757, *3 (S.D.N.Y. Dec. 13, 2002).

The second scenario, which authorizes judicial review of the denial of an application for naturalization, is equally unavailable in this case. Under section 1421, administrative review of naturalization denials is a prerequisite for judicial review. See 8 U.S.C. § 1421(c) (West 2005) (requiring "a hearing before an immigration officer" as a condition precedent to seeking judicial review in a district court); see also 3C AM.JUR.2D ALIENS AND CITIZENS § 3002 (2003) (finding that a naturalization denial is "not subject to judicial review until the applicant has exhausted those statutory administrative remedies available to the applicant"). Interpreting this section, the Fifth Circuit recently stated in Aparicio v. Blakeway:

> Applicants may only appeal to the district court ... if they either sought administrative review and the application was again denied, or if they sought administrative review and the review was delayed for more than 120 days.

302 F.3d 437, 440 (5th Cir. 2002) (citation omitted); see also Levy v. Davis, 83 Fed. Appx. 602, 2003 WL 22903857 at *1 (5th Cir. 2003) (per curiam) (finding that the district court was without jurisdiction to review the denial of plaintiff's application for naturalization where he failed to comply with the applicable regulations for obtaining an immigration hearing); Chavez v. Immigration and Naturalization Service, 844 F.Supp. 1224, 1225 (N.D.Ill.1993) (stating that Congress did not intend "to permit a district court to circumvent the appeals process provided for by statute").

In this case, after CIS denied his application for naturalization, Plaintiff timely submitted a request for administrative review of the denial of his naturalization application, see 8 U.S.C. §

1447(a), along with a request for fee waiver.[5] (See Mot. to Dism. Exh. I at 18).  Plaintiff concedes that his request to waive the $250 filing fee was denied on August 10, 2004, and that he did nothing further to request an administrative hearing before an immigration officer as required by § 1447(a).  (Plaintiff's Response at 3).  Absent tendering of the requisite filing fee or the granting of a waiver of the fee, the N-336 request was not properly filed.  See 8 C.F.R. sec. 103.2(a) (providing that all forms, applications, requests or motions must be filed with the requisite filing fee).  Because Plaintiff did not properly file a request for administrative review, he has not adequately exhausted the administrative remedies available to him and has not satisfied the jurisdictional prerequisite of 8 U.S.C. § 1421(c).  Where, as here, exhaustion of administrative remedies is required by statute, exhaustion is jurisdictional and must be enforced. See McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)

---

[5]     8 CFR § 103.7(c) provides for waiver of fees.  It reads as follows:

(1) Except as otherwise provided in this paragraph (c), any of the fees prescribed in paragraph (b) of this section relating to applications, petitions, appeals, motions, or requests may be waived by the Department of Homeland Security in any case under its jurisdiction in which the alien or other party affected is able to substantiate that he or she is unable to pay the prescribed fee. The person seeking a fee waiver must file his or her affidavit, or unsworn declaration made pursuant to 28 U.S.C. 1746, asking for permission to prosecute without payment of fee of the application, petition, appeal, motion, or request, and stating his or her belief that he or she is entitled to or deserving of the benefit requested and the reasons for his or her inability to pay. The officer of the Department of Homeland Security having jurisdiction to render a decision on the application, petition, appeal, motion, or request may, in his or her discretion, grant the waiver of fee. Fees for "Passenger Travel Reports via Sea and Air" and for special statistical tabulations may not be waived. The payment of the additional sum prescribed by section 245(i) of the Act when applying for adjustment of status under section 245 of the Act may not be waived. The fee for Form I-907, Request for Premium Processing Services, may not be waived. For provisions relating to the authority of the immigration judges or the Board to waive fees prescribed in paragraph (b) of this section in cases under their jurisdiction, see 8 CFR 1003.24 and 1003.8.

(interpreting pre-PLRA version of 42 U.S.C. § 1997e).

In addition to seeking judicial review, Plaintiff asserts that equitable estoppel should be applied as an alternative basis for judicial intervention with respect to his application for naturalization, and pending removal proceedings. (Pet. at 1-2 and 10-20, and Plaintiff's Response at 1-2). Equitable estoppel applies to the federal government only in the narrowest of circumstances. Linkous v. United States, 142 F.3d 271, 277 (5th Cir.1998). To establish equitable estoppel against the government, not only must a plaintiff show the four traditional elements of equitable estoppel, but he must also demonstrate affirmative misconduct on the part of the government. Id.[6] "Affirmative misconduct" requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. Moosa v. INS, 171 F.3d 994, 1004 (5th Cir. 1999). Affirmative misconduct should not be confused with affirmative action; the government's conduct must be wrongful for it to be categorized as misconduct. Carrillo v. United States, 5 F.3d 1302, 1306 (9th Cir. 1993) (cited with approval by the Fifth Circuit in Linkous, 142 F.3d at 278 n. 3).

Plaintiff has failed to identify any affirmative misconduct on the part of the former INS. In support of his argument, Plaintiff relies on the fact that no criminal charges were brought against him in the one-year period prior to the date of his naturalization application on April 18, 1996, and that the INS unreasonably delayed in processing his application. (Pet. at 12-13). Mere file processing delay alone is insufficient to estop the government. INS v. Miranda, 459

---

[6] The four traditional elements of equitable estoppel are that the party to be estopped (1) was aware of the facts, and (2) intended his act or omission to be acted upon; and that the party asserting estoppel (3) did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury. Linkous, 142 F.3d at 278.

U.S. 14, 18-19, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982); Santamaria-Ames v. I.N.S., 104 F.3d 1127, 1333 (9th Cir. 1996) (INS was not estopped from asserting that applicant for naturalization was not of good moral character by its delay in processing his file).[7]

The record reflects, and Plaintiff does not dispute, that he failed to "submit certified court dispositions for his arrests," which the immigration officer requested during his June 10, 1997 interview. (Mot. to Dism. at Exh. I at 21). While he claims that Respondents fabricated the request for additional documents long after his interview, his allegation is wholly unsubstantiated and insufficient to establish affirmative misconduct. (See Pet. at 4 and 18).

The court further notes that the cases on which Plaintiff relies to support his equitable estoppel argument are inapposite. In the majority of those case the INS was found to have engaged in affirmative misconduct. See e.g. Sun Il Yoo v. Immigration and Naturalization Service, 534 F.2d 1325 (9th Cir. 1976) (holding that conduct INS's conduct in delaying for one year its recognition of fact that petitioner had given correct information in his application for a

---

[7] The facts recited in Santamaria-Ames, 104 F.3d at 1127, are similar to Plaintiff's military and criminal history in many respects. Both applied for naturalization under the provisions for noncitizen veterans. Although Santamaria-Ames's criminal conviction record was more extensive, neither had a conviction or arrest within the one-year period predating their applications for naturalizations. The Ninth Circuit made clear that the INS was not limited to consideration of conduct which occurred within the one-year period in determining whether an applicant demonstrates good moral character, but held that an adverse determination could not be based solely on the applicant's conduct prior to the one-year preceding the application. Id. at 1132. However, the court noted that had the record shown that the applicant had not demonstrated good moral character at the present time and during the year preceding his application, it could have affirmed the district court denial of the naturalization application. Id. at 1133 n. 8; see also 8 U.S.C. § 1427(a), 8 C.F.R. § 316.10(a).
    Although not relevant to the disposition of the present action, Respondent's Appendix reflects that Plaintiff was convicted of two offenses: misdemeanor DWI on July 18, 1997, for an offense committed on May 6, 1997, and federal felony offense of fraudulent use of a social security number on June 23, 2003, for an offense convicted on March 25, 1999.

11

sixth-preference immigrant visa was subject to being characterized as "oppressive," and, as such, operated to estop the government from denying petitioner the benefit of precertification in considering his application for adjustment of his status where the Service gave no explanation for the delay and, as far as the record showed, acquired no new data between its receipt of letter in support of application and its decision to reconsider); Chien-Shih Wang v. Attorney General, 823 F.2d 1273, 1277 (8th Cir. 1987) (holding that while INS's delay, as well as its improper effort to blame Wang for its own errors in processing his § 13 application, are to be criticized, it did not amount to affirmative misconduct sufficient to justify equitable estoppel); Villena v. INS, 622 F.2d 1352 (9th Cir. 1980) (holding that INS's failure to respond to alien's petition for preference classification for almost four years with no apparent justification for delay, estopped the INS from claiming that the alien failed to adequately pursue his claim for preference classification in deportation proceedings).[8]

Plaintiff also relies on cases in which the INS had a ministerial duty to approve applications for naturalization for derivative citizenship before the minor reached his or her eighteenth birthday. Ejelonu v. INS, 355 F.3d 539 (6th Cir. 2004) (preventing INS from using alien's youthful trainee status under Michigan law, as a result of guilty pleas to minor juvenile theft, to demonstrate her eligibility for deportation, where alien would have been a naturalized citizen, such that deportation could not have occurred, had INS acted in a timely fashion on her citizen mother's application for certificates of citizenship within the year before alien turned 18;

---

[8] Plaintiff's reliance on Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1184 (9th Cir. 2001), is misplaced. In that case the Ninth Circuit held that incorrect advice received by alien from INS officer could not serve as basis for equitable estoppel with respect to 90-day period for filing motion to reopen deportation proceedings, inasmuch as the negligent providing of misinformation did not constitute affirmative misconduct.

and noting that entire deportation proceeding was founded on illegal evidence, in that youthful trainee records were sealed, and juvenile offenders in alien's position no longer faced same consequences of INS's delay in processing citizenship requests); <u>Harriot v. Ashcroft</u>, 2003 U.S. Dist. Lexis 12135 (E.D. P.A. 2003) (preventing INS from denying application for derivative citizenship where Respondents unreasonable delay and failure to expedite the application, in contravention of its administrative guidelines, caused minor to reach the age of eighteen before naturalization was accomplished); <u>Petition of Tubig in behalf of Tubig</u>, 559 F.Supp. 2 (N.D. Cal. 1981) (holding that because failure to complete application process before son reached the cutoff age of 18 was due to INS' failure to follow its own regular procedures, INS was estopped from denying application on that basis).

Unlike the above cases, this is not an action in which the INS had a ministerial duty, rather than the discretionary duty, to approve Plaintiff's application for naturalization. While Plaintiff qualified for substantial benefits under veterans' naturalization procedures, ICS was still entitled to consider whether he qualified for good moral character for the one-year period preceding his application, as well as for the period between his interview and administration of the oath of allegiance. Accordingly, the court concludes that Plaintiff cannot establish affirmative misconduct on the part of the former INS or current BICE and CIS. Absent evidence of misconduct on the part of Defendants, Plaintiff is not entitled to equitable estoppel.

RECOMMENDATION:

For the foregoing reasons, it is recommended that Defendants' motion to dismiss, filed on January 14, 2005, be granted and that Plaintiff's petition for writ of habeas corpus, construed as a petition/complaint for declaratory relief, be denied and dismissed.

It is further recommended that the District Court deny as moot Plaintiff's motions for appointment of counsel and for default judgment, filed on December 22, 2004.

A copy of this recommendation will be transmitted to counsel for Defendants, and to Plaintiff Peter C. Adiemereonwu, #A286 72 077, Rolling Plains Detention Center, P.O. Box 877, Haskell, Texas 79521.

Signed this 19th day of May, 2005.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation.  Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.